UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| Jackson National Life<br>Insurance Company, | Case No. 15-cv-3044 (WMW/DTS) |
| Interpleader Plaintiff, | |
| | **ORDER** |
| v. | |
| Karyl L. Bohnert, Nancy Anderson, and<br>Michael D. Kozlik, | |
| Interpleader Defendants. | |

_____

This matter is before the Court on Interpleader Defendant Nancy Anderson's motion to enforce settlement. (Dkt. 138.) For the reasons addressed below, the motion is granted.

## BACKGROUND

Interpleader Plaintiff Jackson National Life Insurance Company (Jackson) commenced this action in July 2015 to resolve a dispute pertaining to annuity benefits payable following the death of Kenneth R. Boettcher in April 2015. Jackson deposited the disputed annuity benefits with the Court in October 2015, in a total amount of $181,159.65 (Interpleader Sum). The Court subsequently dismissed Jackson from this action. The remaining Interpleader Defendants are Karyl L. Bohnert, Nancy Anderson, and Michael D. Kozlik in his capacity as the personal representative of the Estate of Kenneth R. Boettcher (the Estate).

In December 2016, in connection with ongoing probate proceedings, the County Court of Sarpy County, Nebraska (the Probate Court), ordered the removal of Kozlik as

the personal representative of the Estate.  The Probate Court subsequently appointed Mary L. Wilson as Special Administrator of the Estate to preserve and protect the rights and interests of the Estate, but she was not authorized to bind the Estate to a settlement agreement without first obtaining the approval of the Probate Court.

On July 25, 2017, Interpleader Defendants filed a joint letter advising the Court that they had reached an agreement to resolve this matter, to which the parties attached a 7-page document that they represented to be the "final version of the settlement agreement." The written settlement agreement addresses, among other things, the apportioned payment of the disputed Interpleader Sum, the mutual release of all claims arising out of this lawsuit, and an agreement to stipulate to the dismissal of this lawsuit.  Consequently, the magistrate judge cancelled a status conference that had been scheduled to occur the next day.

Subsequently, Wilson filed a motion in the Probate Court seeking authorization to execute the settlement agreement on behalf of the Estate.  Several days later, however, Kozlik filed a motion in the Probate Court seeking to enjoin Wilson from executing the settlement agreement on behalf of the Estate.[1]  In September 2018, this Court stayed this case pending the Probate Court's decision as to Wilson's authority to execute the settlement agreement on behalf of the Estate.  In doing so, the Court ordered the parties to file on ECF

---

[1]    Kozlik also filed additional motions in the Probate Court, including a challenge to the Probate Court's order removing him as personal representative of the Estate.  In a May 13, 2020 opinion, the Nebraska Supreme Court affirmed Kozlik's removal as personal representative of the Estate.

a joint status report "[w]ithin 14 days after the Nebraska court rules on the motion to approve the interpleader settlement."

In a December 26, 2019 Order, the Probate Court authorized Wilson to execute a settlement in this case on behalf of the Estate and authorized Wilson to exercise the powers of personal representative of the Estate pursuant to Nebraska law. The Probate Court subsequently denied Kozlik's motion to overturn or alter the December 26, 2019 Order. In a July 7, 2020 letter, Wilson represented that "the final appeal challenging the Special Administrator's ability to enter into a settlement agreement has been withdrawn." In a December 16, 2020 stipulation, the remaining parties represented to the Court that they had reached a partial settlement whereby $20,000 of the Interpleader Sum was to be paid to counsel for the Special Administrator of the Estate. Based on the parties' stipulation and Wilson's unopposed motion for leave to withdraw funds, the Court ordered the Clerk of Court to make a $20,000 payment to the Estate.

Anderson now moves to enforce the settlement agreement that Anderson and Bohnert purportedly reached in July 2017. Bohnert opposes the motion, arguing that no enforceable settlement agreement exists.

## ANALYSIS

A district court has inherent power to enforce a settlement agreement in a case pending before the court. *Barry v. Barry*, 172 F.3d 1011, 1013 (8th Cir. 1999); *accord Bergstrom v. Sears, Roebuck & Co.*, 532 F. Supp. 923, 934 (D. Minn. 1982). "The power of a trial court to enter a judgment enforcing a settlement agreement has its basis in the

policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation." *Bergstrom*, 532 F. Supp. at 934 (internal quotation marks omitted). "The settlement of lawsuits is 'greatly favored' and settlements will not be lightly set aside." *Unitarian Universalist Church of Minnetonka v. City of Wayzata*, 890 F. Supp. 2d 1119, 1124 (D. Minn. 2012) (quoting *Schumann v. Northtown Ins. Agency, Inc.*, 452 N.W.2d 482, 483 (Minn. Ct. App. 1990)).

A district court has "considerable discretion" when determining the appropriate procedure for addressing a motion to enforce a settlement agreement, and a hearing is required "only if there are substantial questions of fact that are not already a matter of record." *Barry*, 172 F.3d at 1013. A district court must hold an evidentiary hearing "when there is a substantial factual dispute concerning the existence or terms of the settlement agreement or when the situation presents complex factual issues." *Gatz v. Sw. Bank of Omaha*, 836 F.2d 1089, 1095 (8th Cir. 1988) (internal citation omitted). But an evidentiary hearing is unnecessary when, as here, the dispute is based on a disagreement or misunderstanding as to the legal effect of undisputed factual circumstances. *See id.*; *see also TCBY Sys., Inc. v. EGB Assocs., Inc.*, 2 F.3d 288, 291 (8th Cir. 1993).

In a case involving a district court's diversity jurisdiction, a settlement agreement must be construed based on state contract law. *Barry*, 172 F.3d at 1013 (applying Minnesota law); *accord Goddard, Inc. v. Henry's Foods, Inc.*, 291 F. Supp. 2d 1021, 1028 (D. Minn. 2003) ("A settlement agreement is essentially a contract, subject to contractual rules of interpretation and enforcement." (internal quotation marks omitted)). Here, the

purported settlement agreement provides that it is to be governed by Minnesota law, and the parties rely on Minnesota law in their briefing.  As such, the Court must evaluate the existence and enforceability of the settlement agreement based on Minnesota contract law.

Bohnert argues that no enforceable settlement agreement exists on four bases: (1) the parties did not reach an agreement on all material terms, (2) Bohnert's attorney lacked settlement authority, (3) a condition precedent never occurred, and (4) the parties' subsequent actions reflect that any settlement agreement has been abandoned.  The Court addresses each argument in turn.

## I.     Agreement on Material Terms

Bohnert first argues that no settlement agreement exists because no "meeting of the minds" occurred as to the material terms of the agreement.

Under Minnesota law, "a settlement agreement is valid and binding when there is a definite offer and acceptance thereof, thereby resulting in a meeting of the minds on the contract of settlement." *Shell v. Amalgamated Cotton Garment*, 871 F. Supp. 1173, 1181 n.16 (D. Minn. 1994) (citing *Jallen v. Agre*, 119 N.W.2d 739, 743 (Minn. 1963)). "Minnesota law does not require that the parties sign a writing in order for there to be offer and acceptance sufficient to give rise to a binding contract for settlement." *Id.* (citing *Rosenberg v. Townsend, Rosenberg & Young*, 376 N.W.2d 434, 437 (Minn. Ct. App. 1985)).  Rather, an "enforceable settlement requires the parties to reach agreement on the essential terms of the deal." *Sheng v. Starkey Labs., Inc.*, 117 F.3d 1081, 1083 (8th Cir. 1997) (citing *Ryan v. Ryan*, 193 N.W.2d 295, 297 (Minn. 1971)).  "Minnesota

5

follows the objective theory of contract formation, under which an outward manifestation of assent is determinative, rather than a party's subjective intent." *TNT Props., Ltd. v. Tri-Star Devs., LLC*, 677 N.W.2d 94, 102 (Minn. Ct. App. 2004).

Here, the record reflects that Anderson's counsel emailed a written settlement agreement to Bohnert's counsel on July 24, 2017, and indicated that this document was a "draft" that remained subject to approval and revision by both parties. The July 24, 2017 draft of the settlement agreement is not in the record. That same day, however, the parties filed a joint status update, representing to the Court that "the parties have reached an agreement for resolution of the above-captioned matter and are working to document their agreement." Bohnert does not, and has never, disputed the factual accuracy of the representations made in the July 24, 2017 status update jointly filed with the Court.

The next day, the magistrate judge held a telephonic status conference that included counsel for both Anderson and Bohnert. The magistrate judge ordered the parties to jointly file a status report regarding the settlement by the end of the business day and cancelled the status conference that was scheduled to occur the next day. Later that day, the parties filed a joint status update, representing to the Court that "the parties have reached an agreement for resolution of the above-captioned matter and have further negotiated a settlement agreement through counsel," and that the "final version of the settlement agreement is enclosed herewith." Attached to the parties' July 25, 2017 status update is an unsigned 7-page "Settlement Agreement and Release" that, by its terms, "constitutes the entire agreement" between the parties. Bohnert's counsel did not challenge the accuracy

of the any of the representations made in the parties' joint status update or the attached unsigned settlement agreement, nor did Bohnert otherwise advise the Court that the status of the parties' settlement had changed.

There is no genuine dispute as to the foregoing facts. Bohnert now argues, however, that the settlement agreement that the parties jointly submitted to the Court in July 2017 was not final because additional terms remained to be negotiated. But even if "the parties left insubstantial matters for later negotiation, or . . . certain ministerial tasks remained to be performed in order to implement the settlement," these facts do "not vitiate the validity of the agreement reached." *Trnka v. Elanco Prods. Co.*, 709 F.2d 1223, 1226 n.2 (8th Cir. 1983) (internal quotation marks omitted); *accord Bergstrom*, 532 F. Supp. at 932. Indeed, a court can enforce a settlement agreement even if the agreement does not expressly resolve ancillary issues. *Sheng*, 117 F.3d at 1083. "The fact that the parties left some details for counsel to work out during later negotiations cannot be used to abrogate an otherwise valid agreement." *Id.* Thus, the Court must determine whether any *material* terms of the parties' settlement remained unresolved in July 2017.

"Only those terms upon which the settlement hinges are to be considered material terms." *Goddard, Inc.*, 291 F. Supp. 2d at 1028 (citing *Sheng*, 117 F.3d at 1083). Generally, a " 'material term' is defined as 'a contractual provision dealing with a significant issue such as subject matter, price, or payment.' " *Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc.*, 528 F.3d 556, 562 n.6 (8th Cir. 2008) (quoting *Black's Law Dictionary* 1510 (8th ed. 2004)) (brackets omitted). The material terms of a settlement agreement typically

involve "(1) payment of an identified sum (2) in exchange for the release of a claim." *Smith v. Unum Life Ins. Co. of Am.*, No. 19-cv-1659 (MJD/LIB), 2020 WL 1172028, at *5 (D. Minn. Feb. 5, 2020) (collecting cases), *report and recommendation adopted by* 2020 WL 1169427 (Mar. 11, 2020). However, when "additional terms are discussed prior to reaching a settlement agreement, those terms may also be material." *Id.* Whether a particular term of a settlement agreement is material "is a legal determination for the Court." *Goddard, Inc.*, 291 F. Supp. 2d at 1028 (internal quotation marks omitted).

Here, the 7-page settlement agreement that the parties submitted to the Court in July 2017—which the parties jointly represented as "final"—includes detailed terms. Those terms address, among other things, the apportioned payment of the disputed Interpleader Sum, the mutual release of all claims arising out of this lawsuit, and an agreement to stipulate to the dismissal of this lawsuit. These terms are certain and unambiguous. Bohnert does not express disagreement with these terms now, nor does she present evidence that she has *ever* expressed disagreement with these terms. Rather, the record unequivocally reflects that Bohnert agreed to these terms. Indeed, the record includes a July 25, 2017 email from Bohnert to her attorney, in which Bohnert conveyed that she was "prepared to sign" the settlement agreement.[2] Bohnert's attorney forwarded that email to Anderson's attorney. And the parties jointly represented to the Court that they had "reached an agreement" to resolve this matter and that the 7-page settlement agreement

---

[2]    This email was sent from what appears to be a joint email account and purports to be from both Bohnert and her spouse.

was the "final version of the settlement agreement."  These objective manifestations of intent demonstrate that the parties reached an agreement to settle this matter on or about July 25, 2017.  *TNT Props.*, 677 N.W.2d at 102 (recognizing that, when evaluating contract formation, subjective intent is not relevant).

Bohnert now argues, however, that there is one *additional* term that is missing from the settlement agreement that the parties submitted to the Court in July 2017: a "clawback" provision pursuant to which both Bohnert and Anderson would reserve the right to implead the other as a party if a third party ever seeks to recover any portion of the annuity funds from either Bohnert or Anderson.  If this were a material term, it could cast doubt as to whether an enforceable settlement agreement was reached in July 2017.  But the record does not establish that the proposed clawback provision was material to the parties' settlement.  Bohnert presents no evidence that the parties discussed this clawback provision during the negotiations immediately preceding July 25, 2017, when the parties jointly represented to the Court that they had reached a final settlement agreement.  Consistent with the parties' representations to the Court, Bohnert conveyed to her attorney on July 25, 2017, that she was "prepared to sign" the settlement agreement, which did not include a clawback provision.  And it was not until nearly a week later, in a July 31, 2017 email, that Bohnert's counsel first mentioned a clawback provision.[3]

---

[3]     The record includes a subsequent email from Bohnert's attorney, dated August 8, 2017, suggesting that a clawback provision had been discussed during earlier settlement discussions involving Anderson's former attorney, Dan Payne.  But Payne ceased representing Anderson in March 2016, meaning that any such discussion of a clawback provision occurred *at least* sixteen months before the agreement was memorialized in

It is true that, when Anderson subsequently declined to add the proposed clawback provision, Bohnert's attorney indicated that "we may have a problem" and explained why the clawback provision was important to Bohnert. But these communications occurred weeks after the parties unequivocally expressed mutual agreement as to the material terms in the written settlement agreement. A party who voluntarily enters into a settlement agreement cannot avoid the agreement by indicating later that he or she is dissatisfied with the terms of the settlement. *Schumann*, 452 N.W.2d at 485; *Skalbeck v. Agristor Leasing*, 384 N.W.2d 209, 213–14 (Minn. Ct. App. 1986). Moreover, Bohnert's subsequent actions do not suggest that the lack of a clawback provision was material to the settlement agreement. Indeed, nearly a year later, in a July 9, 2018 status update jointly signed by counsel for both Anderson and Bohnert, the parties requested that the "settlement on file with the Court continue to be held in abeyance" pending a ruling by the Probate Court. Not until two years after that, in July 2020, did Bohnert first clearly represent to the Court that no settlement had been reached.

In summary, the record does not support Bohnert's assertion that the proposed clawback provision was material to the parties' settlement agreement. To the contrary, the evidence of the parties' objective manifestations of intent establishes that Anderson and Bohnert reached an agreement as to all the material terms of their settlement in July 2017. Even if Bohnert or her attorney subjectively intended to withhold acceptance of the

---

writing in July 2017. This long gap in time, during which there is no evidence that a clawback provision was discussed, suggests that the clawback provision was not material to the settlement.

settlement agreement unless a clawback provision were included, their unmanifested subjective intent is irrelevant to whether an agreement was reached.  *See TNT Props.*, 677 N.W.2d at 102.  And the fact that the parties continued to negotiate ancillary terms thereafter also does not abrogate the otherwise valid agreement.  *See Sheng*, 117 F.3d at 1083.  Accordingly, Bohnert cannot avoid enforcement of the settlement agreement on this basis.

## II.        Settlement Authority

Bohnert next argues that the settlement agreement is unenforceable because her attorney, Harris, lacked authority to settle this case on her behalf.

"Under Minnesota law, settlement of a client's claim is not subsumed within the ordinary agency of an attorney for [the attorney's] clients, so an attorney must be specially authorized to settle a claim."  *Barry*, 172 F.3d at 1015 (citing *Schumann*, 452 N.W.2d at 484).  A settlement agreement is enforceable if the attorney who entered into the agreement had express authority to do so.  *Harris v. Ark. State Highway & Transp. Dep't*, 437 F.3d 749, 751 (8th Cir. 2006); *accord Rosenberg*, 376 N.W.2d at 437.  But an attorney is presumed to possess settlement authority absent affirmative evidence that the attorney lacked such authority.  *See Greater Kansas City Laborers Pension Fund v. Paramount Indus., Inc.*, 829 F.2d 644, 645 (8th Cir. 1987).  When it is established that an attorney has entered into an agreement to settle a case, "the party who denies that the attorney was authorized to enter into the settlement has the burden to prove that authorization was not

given." *Harris*, 437 F.3d at 751 (internal quotation marks omitted).  "This is a heavy burden." *Id.* (internal quotation marks omitted).

Settlement authority can be established based on "written or spoken words or the conduct of the principal which, reasonably interpreted, causes an agent to believe that the principal desires him or her to act in a particular manner on the principal's account." *Id.* (internal quotation marks omitted).  The record reflects that Harris represented Bohnert in this matter beginning in or about August 2015, when he filed an answer to the complaint, until his representation of Bohnert was terminated in February 2020.  Throughout his representation of Bohnert, Harris appeared in court and communicated with the Court on Bohnert's behalf.  Harris's representation included, among other things, appearing at a court-ordered settlement conference in May 2016 and providing status updates to the Court regarding settlement discussions.  The record also includes numerous email correspondence in 2016 and 2017, which reflect that Harris actively negotiated the terms of the parties' settlement.  Significantly, on July 25, 2017—the same day that the parties jointly represented to the Court that they had finalized their settlement agreement— Bohnert conveyed to Harris in an email that she was "prepared to sign" the agreement. And neither Bohnert nor her attorney attempted to repudiate the settlement agreement for nearly three years thereafter.  Instead, Bohnert asked the Court to hold the settlement on file in abeyance.  In contrast to these undisputed facts, Bohnert presents no affirmative

evidence that Harris *lacked* settlement authority.[4]   As such, Bohnert clearly has not satisfied her heavy burden to prove that Harris lacked settlement authority.

Even if Harris lacked settlement authority, "an unauthorized settlement of a client's claim by an attorney may be ratified, either impliedly or expressly, by a client, who is thereafter bound by the agreement." *Rosenberg*, 376 N.W.2d at 437 (citing *Gran v. City of St. Paul*, 143 N.W.2d 246, 249 (Minn. 1966)).   "Conduct, as well as verbal expression, may at times constitute acceptance, and silence may be acceptance where there is a duty otherwise to deny." *Skalbeck*, 384 N.W.2d at 213.   Evidence that a party has repudiated a settlement agreement "must be clearly expressed, . . . positive, unequivocal, and inconsistent with the existence of the contract." *City of St. Charles v. Stevens*, 354 N.W.2d 884, 885 (Minn. Ct. App. 1984) (quoting *Desnick v. Mast*, 249 N.W.2d 878, 884 (Minn. 1976)) (emphasis omitted).

Here, Bohnert's actions in and after July 2017 suggest that, even if Harris lacked settlement authority, Bohnert ratified the settlement agreement.   On the same day that counsel for Anderson and counsel for Bohnert jointly represented to the Court that they had reached a final settlement agreement, Bohnert conveyed to her attorney by email that she was "prepared to sign" the agreement.   There is no evidence that either Bohnert or her

---

[4]     Bohnert presents evidence that Harris's license to practice law was suspended in April 2017 and asserts that Harris could not, therefore, have had settlement authority.   But Bohnert presents no legal authority establishing that the suspension of an attorney's law license invalidates the attorney's actions during the period of suspension.   That Harris might have been engaging in the unauthorized practice of law in July 2017 has no apparent relevance to whether a valid settlement agreement was reached at that time.

attorney attempted to repudiate the settlement for nearly three years.  Indeed, counsel for the Special Administrator of the Estate represented to the Court in a May 15, 2018 status update that "the parties reached an agreement as to dispersal of the deposited funds late last summer, subject to my client's receipt of approval by the [Probate Court]."  Neither Bohnert nor her attorney disputed the accuracy of this status update.  Later, in a July 9, 2018 status update jointly signed by counsel for both Anderson and Bohnert, the parties requested that the "settlement on file with the Court continue to be held in abeyance" pending a ruling in the Probate Court.  One and a half years later, Bohnert advised the Court that her attorney had retired, and she represented herself *pro se* beginning in February 2020.  Not until five months later, in July 2020, did Bohnert first clearly represent to the Court that no settlement had been reached.  Throughout this three-year period, Bohnert made no efforts to litigate this case.  Even now, although she generally disputes whether the settlement agreement was finalized, Bohnert does not specifically repudiate any of the material terms in the July 2017 settlement agreement.  These facts demonstrate that, even if Harris lacked settlement authority in July 2017, Bohnert ratified the settlement agreement through her subsequent conduct.

For these same reasons, Bohnert may be equitably estopped from repudiating the July 2017 settlement agreement.  *See Rosenberg*, 376 N.W.2d at 437–38.  The doctrine of equitable estoppel is designed to prevent a party from unfairly benefiting from his or her own actions.  *Id.*  When, as here, a client has created the appearance that her attorney has authority to settle a case, if the adversary party detrimentally relies on the settlement, the

14

client may be estopped from denying that the attorney had settlement authority. *Barry*, 172 F.3d at 1015. Minnesota courts repeatedly have enforced settlement agreements based on equitable estoppel. *See, e.g.*, *Schumann*, 452 N.W.2d at 485 (concluding that appellants were estopped from repudiating their former attorney's written settlement when the respondents relied on the settlement agreement and stopped preparing for trial); *see also Austin Farm Ctr., Inc. v. Austin Grain Co.*, 418 N.W.2d 181, 186 (Minn. Ct. App. 1988); *Johnson v. Sitzmann*, 413 N.W.2d 541, 545 (Minn. Ct. App. 1987); *Rosenberg*, 376 N.W.2d at 437–38.

Here, in reliance on the existence of a final settlement agreement, the parties sought cancellation of the status conference scheduled to occur before the magistrate judge on July 26, 2017. Thereafter, in reliance on the existence of a final settlement agreement, the parties did not attempt to litigate this matter and repeatedly represented to the Court that an agreement had been reached. In turn, this Court stayed this matter for several years based on the parties' representations. As such, even if Bohnert's attorney lacked settlement authority, equitable estoppel precludes Bohnert from repudiating the July 2017 settlement agreement now.

In summary, the record demonstrates that Harris was authorized to settle this case on Bohnert's behalf and that, even if Harris lacked such authority, Bohnert ratified the settlement agreement and is now estopped from repudiating it. Accordingly, Bohnert cannot avoid enforcement of the settlement agreement on this basis.

### III.      Condition Precedent

Bohnert also contends that the settlement agreement is unenforceable because it includes a condition precedent requiring the Probate Court to give the Special Administrator authority to execute the settlement agreement on behalf of the Estate.

A condition precedent is "an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." *Seman v. First State Bank*, 394 N.W.2d 557, 560 (Minn. Ct. App. 1986) (internal quotation marks omitted).  When a contract includes a condition precedent, a party does not acquire any rights under the contract until the condition occurs.  *Nat'l Union Fire Ins. v. Schwing Am., Inc.*, 446 N.W.2d 410, 412 (Minn. Ct. App. 1989).

Here, the July 2017 settlement agreement provides that $20,000 of the annuity funds are to be paid to the Special Administrator on behalf of the Estate.  The written settlement agreement acknowledges that "the Special Administrator has not yet received authority to settle the Estate's claim in the Interpleader Action for $20,000," but provides that, "in the event the Probate Court does not grant the Special Administrator authority to settle the Estate's claim for $20,000, . . . Bohnert and Anderson will receive the distributions in Paragraph 1 and *the settlement between Bohnert and Anderson will remain binding*."  (Emphasis added.)  As such, execution of the settlement agreement by the Special Administrator on behalf of the Estate unambiguously was *not* a condition precedent to the

settlement between Bohnert and Anderson.[5]  Bohnert's arguments to the contrary lack merit.

Bohnert, therefore, cannot avoid enforcement of the settlement agreement on this basis.

## IV.      Abandonment

Bohnert also argues that the conduct of the parties *after* July 2017 "negates [the] existence" of the settlement agreement. Even if the settlement agreement once existed, Bohnert argues, the parties have since abandoned it.

Evidence that a party has abandoned or repudiated a settlement agreement "must be clearly expressed, and acts and conduct of the parties to be sufficient must be positive, unequivocal, and inconsistent with the existence of the contract." *City of St. Charles*, 354 N.W.2d at 885 (quoting *Desnick*, 249 N.W.2d at 884) (emphasis omitted).  For the reasons addressed in Part II of this Order, Bohnert's conduct after July 2017 did not effectively repudiate the settlement agreement and, to the contrary, estops her from doing so.  *See Schumann*, 452 N.W.2d at 485; *Rosenberg*, 376 N.W.2d at 438.

According to Bohnert, Anderson's conduct demonstrates that Anderson repudiated the settlement agreement.  But the record does not support this contention.  As addressed above, between July 2017 and July 2018, the parties repeatedly represented to the Court that they had reached a settlement and that the Court should hold the settlement in abeyance

---

[5]      Even if this were a condition precedent, it is undisputed that the Special Administrator obtained approval from the Probate Court and settled this matter for $20,000, consistent with the July 2017 settlement agreement.

pending a ruling by the Probate Court.  Consistent with these representations, no party

attempted to litigate this case for nearly three years.  The record also includes a July 10,

2020 letter from Bohnert's attorney to Anderson's attorney, in which Bohnert's attorney

asserts, in relevant part:

> Thanks for discussing the case and e-mailing your response,
> which I will summarize as generally alleging that a Joint Status
> Report filed on July 25, 2017, containing an unsigned draft of
> a settlement agreement, effectively settled Karyl Bohnert's
> dispute with your client in this case.

Subsequently, on April 14, 2021, Anderson represented to the Court that the "parties

reached a settlement agreement in this matter in July 2017," and sought permission to file

the pending motion to enforce that settlement.  These facts contradict Bohnert's contention

that Anderson repudiated the settlement agreement.

There is evidence that Anderson attempted to resolve this dispute without seeking a

court-ordered enforcement of the July 2017 settlement agreement.   And Anderson's

counsel approved a July 7, 2020 status update, which represented to the Court that

Anderson and Bohnert "have not reached a settlement."  But evidence of repudiation "must

be clearly expressed, . . . positive, unequivocal, and inconsistent with the existence of the

contract."  *City of St. Charles*, 354 N.W.2d at 885 (quoting *Desnick*, 249 N.W.2d at 884)

(emphasis omitted).   Anderson's conduct after July 2017 does not demonstrate clear,

positive and unequivocal repudiation of the settlement agreement.

Accordingly, Bohnert cannot avoid enforcement of the settlement agreement on this

basis.

In summary, the undisputed facts in the record establish that a binding and enforceable settlement agreement exists between Anderson and Bohnert that comprises the material terms agreed to on or about July 25, 2017.  These material terms include, but are not limited to, the apportioned payment of the disputed Interpleader Sum, the mutual release of all claims arising out of this lawsuit, and an agreement to stipulate to the dismissal of this lawsuit.  The parties shall comply with the terms of their settlement agreement as soon as practicable.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Interpleader Defendant Nancy Anderson's motion to enforce settlement, (Dkt. 138), is **GRANTED**.


Dated:  February 22, 2022                                    s/Wilhelmina M. Wright
                                                             Wilhelmina M. Wright
                                                             United States District Judge